PEOPLE, PLAINTIFF AND APPELLEE, v. LÓPEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in a Prosecution for Adulteration of Milk.

No. 2069.—Decided July 28, 1923.

PUBLIC HEALTH—ADULTERATED MILK—EVIDENCE.—A judgment of conviction for the sale of adulterated milk based on the uncorroborated testimony of a sanitary inspector who repeatedly evaded answering satisfactorily the question of whether he saw the accused sell the adulterated milk, should be reversed.

The facts are stated in the opinion.

*Mr. A. Torres Córdova* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was accused of having sold adulterated milk and convicted of the offense as charged.

Practically the only evidence tending to show a sale was the statement of a health inspector, from which we take the following extract:

"This young man had two glass jars in his hand containing milk. I was taking some milk samples in the establishment of José Sandoval when he brought me the milk and said: 'I wish you would examine this milk.', I replied, 'Wait a moment until I finish taking these samples and then I will do so.' When I had taken the samples, I took the milk from him which looked to me as though it were adulterated, so I took several official samples and concluded that he was answerable inasmuch as he has an affidavit, sworn to before a notary, in the office, in order to engage in the sale of milk. Did you see him sell milk on that day?—A. After I took the sample he sold the milk.—Defense: We move to strike the testimony regarding the affidavit since the affidavit is the best evidence.—Judge: The Court orders it to be stricken.—*Fiscal:* Did you see him sell milk? A. After I took the sample he sold the milk.—What milk was it that he sold?—A. It was a glass container commonly used for olives.— Was it the same milk from which you had taken samples?—Yes, sir; the same milk of which I had taken the sample. Q. Did you allow him to sell it? I returned it to him and he sold it. Here in Ponce?—A. In Ponce.—Under what number was the sample sent

to the laboratory?—A. No. 31538.—Defense: You say that you saw him sell milk?—A. After I took the sample therefrom he sold the rest of the milk.—To whom did he sell it?—He sold it in the street to several families.—Were there many families there? A. Yes.— Did you take the names of any of them?—A. No, there was no need.—You do not remember any of their names?—A. I do not remember.—Under your oath, are you certain that he sold milk?— A. That he sold milk.—But on that day, the milk that you seized?— A. He sold the milk that was left.—Was the charge sworn to by you for selling milk or for something else?—A. For selling adulter- ated milk. The charge sworn to by you before the *fiscal* is this one. Read what it says.—A. The aforesaid defendant, wilfully, maliciously and illegally sold cow's milk diluted with water by peddling the same in the streets of Ponce. Did you see him sell that milk or peddle it through the streets of Ponce.—A. After I took the samples of milk he sold what was left over. Did you see any person, do you know any person to whom he sold milk?—A. Well, since he went around with a one-horse cart. . . . . What was the name of the street in Ponce where this happened?—In the street named Húcar, Intendente Ramírez. You say that you were at a milk stand and that he voluntarily presented himself so that you might examine the milk?—A. He brought me the milk of his own volition. So that you did not have to go to him?—Not at all.''

Twice by the district attorney and three times by the de- fense was this witness asked if he saw the defendant sell any of the milk in question; and five times within less than so many minutes the witness evaded the question. Con- victions based upon such testimony, uncorroborated and bearing upon its face the insignia of its own untrust- worthiness, cannot be permitted to stand.

All the other circumstances in the case were if anything rather more favorable than adverse to defendant.

See also the recent case of *People* v. *Martínez, ante,* page 271.

The judgment appealed from must be

*Reversed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.